CARDEN v GENERAL MOTORS CORPORATION

Docket No. 81824. Submitted February 4, 1986, at Detroit. Decided September 5, 1986. Leave to appeal denied, 428 Mich —.

Donald Carden, who is black and stutters severely, brought an action in the Wayne Circuit Court against General Motors Corporation. Plaintiff alleged breach of contract and race and handicap discrimination as a result of defendant's not hiring plaintiff for two different positions that the plaintiff applied for. A jury returned a unanimous verdict of no cause of action in favor of the defendant. Plaintiff then brought a motion for a new trial which the trial court, Lucile A. Watts, J., granted. The trial court found the verdict against the great weight of the evidence regarding plaintiff's race discrimination claim and that the jury instructions describing the plaintiff's burden of proof were erroneous. Defendant appeals by leave granted from the order granting plaintiff's motion for a new trial.

The Court of Appeals held:

1. The trial court abused its discretion in finding that the jury verdict was against the great weight of the evidence.

2. The trial court incorrectly found that the jury instructions were erroneous regarding plaintiff's burden of proof for his discrimination claims. The trial court correctly instructed the jury in this regard.

3. The trial court was correct in refusing to instruct the jury that the plaintiff did not need to prove an intent to discriminate in his handicap discrimination case. The granting of a new trial on this basis was error.

The trial court's order for a new trial is reversed and the jury verdict is reinstated.

REFERENCES

Am Jur 2d, Civil Rights §§ 103, 248.5, 412.3.

Am Jur 2d, New Trial §§ 218-220.

Race discrimination in labor and employment—Supreme Court cases. 28 L Ed 2d 928.

Who is "qualified" handicapped person protected from employment discrimination under Rehabilitation Act of 1973 (29 USCS §§ 701 et seq.) and regulations promulgated thereunder. 80 ALR Fed 830.

1. TRIAL — NEW TRIAL — MOTIONS AND ORDERS — COURT RULES.

A trial court does not have an unlimited power to grant a new trial merely because it does not agree with the verdict; a trial court may not substitute its judgment for that of the finders of fact; a trial court may grant a new trial where the verdict is against the great weight of the evidence (GCR 1963, 527.1[5], now MCR 2.611[A][1][e]).

2. CIVIL RIGHTS — RACE DISCRIMINATION — JURY INSTRUCTIONS — BURDEN OF PROOF.

A trial court correctly instructs a jury regarding a plaintiff's burden of proof in a racial discrimination action where it instructs that the plaintiff has the burden of proving: (1) that he belonged to a racial minority; (2) that he applied and was qualified for a job for which the employer was seeking applicants; and (3) that, despite his qualifications, he was rejected.

3. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — FAILURE TO HIRE — INTENT.

Two requirements must be met in order for a failure to hire to fall within the prohibition of the Handicappers' Civil Rights Act which provides that an employer shall not fail or refuse to hire, recruit, or promote an individual because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position: (1) the employer's failure or refusal must have been because of a handicap, and (2) the handicap in question must be unrelated to the individual's ability to perform the duties of the job or position at issue (MCL 37.1202[1][a]; MSA 3.550[202][1][a]).

4. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — FAILURE TO HIRE — INTENT.

An employer's intent is irrelevant to determining whether a handicap was unrelated to an employee's ability to perform a job for purposes of the prohibition of the Handicappers' Civil Rights Act which provides that an employer shall not fail or refuse to hire, recruit, or promote an individual because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position; the employer's intent is not irrelevant to determining whether the employer's failure or refusal to hire, recruit, or promote the plaintiff was because of a handicap (MCL 37.1202[1][a]; MSA 3.550[202][1][a]).

*Benjamin & Goldfine* (by *Frederick B. Benjamin*), for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *Ernest R. Bazzana* and *Theresa M. Smith*), and *Maurice Jenkins,* Office of General Counsel, for defendant.

Before: BEASLEY, P.J., and J. H. GILLIS and M. H. CHERRY,* JJ.

PER CURIAM. Plaintiff brought suit in Wayne Circuit Court against defendant corporation, alleging breach of contract and race and handicap discrimination after not having been hired for two different positions. A jury returned a unanimous verdict of no cause of action in favor of the defendant, which now appeals by leave granted from the trial court's order granting plaintiff's motion for a new trial.

The plaintiff, who is black and stutters severely, applied for an apprenticeship with defendant on June 21, 1978, and asked to be considered for three trades; electrician, millwright and machine repair. He was given aptitude tests and had an interview on July 6, 1978, with a blind employee of defendant's personnel office. Plaintiff contends that no one else was present at the interview, while defendant insists that a representative of the UAW Apprentice Committee also was present and filled out the interview forms.

Plaintiff scored thirty-three points out of a possible sixty-seven on defendant's guide to apprentice selection procedure; however he would have received from thirty-five to forty points had he received credit for a pre-apprenticeship math course which he completed, but for which he failed to bring to the interview the required documentation. An applicant must score at least thirty-five to remain eligible and in the prior five years of the

* Circuit judge, sitting on the Court of Appeals by assignment.

program the defendant had selected no applicant with a score of less than sixty.

After failing to qualify for the apprenticeship program, the plaintiff applied for an hourly job with the defendant on July 25, 1978. He attended the Orientation i meeting, but arrived late for his first interview, due to highway flooding. He was granted a new interview, attended the Orientation ii meeting and was provided with a physical examination on March 26, 1979. The two orientations and the interview were conducted at defendant's Consolidated Employment Center.

At trial, plaintiff testified that he received a telephone call at about 8:00 A.M. on May 4, 1979, from a woman whose name sounded like "Berry." She asked him if he still was interested in a position and told him to appear for work on Monday, May 7, 1979, at 9:00 A.M. at the Pontiac Parts Plant. She also told him to bring several employment-related forms he had received at the Orientation ii meeting. When plaintiff received the call, he quit the job he had found in September, 1978, as a mailroom clerk with the Michigan Credit Union League. A female employee of the Consolidated Employment Center testified that she may have been the one who called the plaintiff.

The plaintiff arrived at the Pontiac Parts Plant about 8:50 A.M. on May 7, 1979, but due to the large size of the facility and because his speech problem made it difficult for a guard to provide him with directions, he arrived at the receptionist's desk at 9:03 A.M. He was told he was late and could not continue with his appointment. When he told the receptionist that he had quit his job, she informed him he would be rescheduled within two weeks, but no one from the defendant ever called.

In his suit, plaintiff alleged breach of contract, based upon defendant's failure to hire him after

allegedly making an oral contract of employment over the phone. He also alleged race discrimination under the Civil Rights Act and handicap discrimination pursuant to the Michigan Handicappers' Civil Rights Act. Trial took place for eleven days in March, 1984, at the conclusion of which the jury returned a verdict of no cause of action on behalf of the defendant. The trial judge granted a new trial on May 4 1984, because she found the verdict against the great weight of the evidence regarding plaintiff's race discrimination claim and because of allegedly erroneous jury instructions describing the plaintiff's burden of proof. This decision was affirmed at the hearing on defendant's motion for rehearing on May 13, 1984, and defendant was granted leave to appeal on April 5, 1985.

Did the trial judge abuse her discretion in finding that the jury verdict was against the great weight of the evidence? We believe she did. GCR 1963, 527.1(5), now MCR 2.611(A)(1)(e), provides for a new trial if the verdict is against the great weight of the evidence. This Court has held:

> It is within the trial court's sound discretion to grant or deny a motion for new trial. The standard of review is whether the jury's verdict was against the overwhelming weight of evidence. A reviewing court affords deference to the trial judge's decision since the trial judge, having heard the witnesses, is uniquely qualified to judge the jury's assessment of their credibility. This Court will not substitute its judgment for that of the jury unless a review of the record reveals a miscarriage of justice. [*May v Parke, Davis & Co,* 142 Mich App 404, 410-411; 370 NW2d 371 (1985).]

Despite this Court's usual deference to the trial court's decision, the trial court does not have an

" . . . unlimited power to grant a new trial merely because it does not agree with the verdict. The court may not substitute its judgment for that of the finders of fact." *Bell v Merritt,* 118 Mich App 414, 422; 325 NW2d 443 (1982), lv den 417 Mich 954 (1983).

In granting plaintiff's motion for a new trial, the trial judge said only:

> There are a couple of things about this case which troubles us. First, the instruction on the burden of proof; and, secondly, it is this Court's opinion that as to the race question, the jury's decision was against the great weight of evidence, and we're going to grant a new trial.

No further explanation of the evidence she thought the jury had overlooked was provided, nor was anything more specific indicated at the hearing on the motion for rehearing. At that hearing, the trial judge concluded:

> As to changing the decision made earlier for a new trial. We do not grant a new trial lightly and, ah, have seen nothing that was said today that would change our mind on that, so that is that.

The determination that the jury verdict was against the great weight of the evidence was stated as applying only to the "race question." Plaintiff's race discrimination claim pertained only to his application for the apprenticeship program in June, 1978. Consequently, only the facts related to plaintiff's apprentice application need to be reviewed to determine whether the jury's verdict that there was no race discrimination was against the great weight of the evidence.

Under the administrator's guide to defendant's apprentice selection procedure, there are sixty-

seven possible points which an applicant can earn. The plaintiff earned nine out of seventeen in Category No. 1, based on his general education. For Category No. 2, he earned no points, although it is undisputed that he had completed a preapprentice math program, which is significant and will be discussed below. For job experience, Category No. 3, the plaintiff received no points out of a possible seven; however, he received nineteen out of twenty-two in Category No. 4, based upon aptitude tests. For knowledge of trade, in Category No. 5, he got no points out of two and for Category No. 6, overall evaluation he earned five out of a possible ten points. His total, therefore, was thirty-three points out of the sixty-seven possible.

The preapprentice math program points, which might have totalled between two and seven points, could be seen as crucial. There is no dispute that defendant's plant supervisor of personnel development was aware that plaintiff had completed the math program, but testimony indicated that defendant had a strict policy requiring documentation prior to awarding points for academic courses. Plaintiff insisted that he was not told to bring such documentation and further asserted that the personnel supervisor should have called him to tell him to bring proper documentation, so that he could earn the points for the math program. Indeed, it would have been thoughtful to do so, but there is no requirement that such a step be taken and no evidence that the same ever had been done for other applicants.

The plaintiff also argued that he had coursework and job experience which pertained to the applied-for trades for which he was not given credit. He had studied advertising and product design, but had not completed the coursework and the portfolio of artwork introduced at trial was not pre-

sented during the July 19, 1979, interview. And, while plaintiff had experience doing home repair work, such as painting, roofing and tiling, defendant countered that this experience was unrelated to the trades in question.

To have remained eligible for consideration as an apprentice, an applicant had to receive at least thirty-five points. Those with a score of thirty-five or higher were placed in a pool and ranked according to their points. Indeed, had plaintiff receive all seven math points and three of seven work experience points, his score might have been as high as forty-three points. This, however, would not have been sufficient for him to qualify as an apprentice. In the previous five years, all applicants chosen from the pool had scored sixty or more points.

Finally, plaintiff asserted that it was ridiculous for the defendant to permit a blind person to conduct an interview and to conduct the interview alone. Defendant responded that a representative of the UAW Apprentice Committee also was present and was the only one who actually completed the records of the interview, as the blind employee could not write. As the plaintiff acknowledged lying about his age to get a job when he was seventeen and inconsistently explained why he failed to reveal prior job experience with Ford Motor Company on his application, it may be presumed that the jury resolved this credibility dispute on behalf of defendant.

Most importantly, although plaintiff insisted that the alleged errors and omissions were racially motivated, there was ample evidence for the jury to find that the defendant did not racially discriminate against the plaintiff when it did not hire him as an apprentice. The jury's verdict was not against the great weight of the evidence and the trial court erred in granting a new trial.

The trial judge's other reason for granting a new trial was based upon the incorrect finding that her jury instructions were erroneous regarding plaintiff's burden of proof for his discrimination claims. As to those issues, the judge relied upon *McDonnell Douglas Corp v Green,* 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973), in formulating her instructions. Although that case involved a claim under the federal civil rights act of 1964, this Court consistently has relied on the burden of proof pronounced there when resolving state discrimination claims. *Bogue v Teledyne Continental Motors,* 136 Mich App 374; 356 NW2d 25 (1984), lv den 421 Mich 862 (1985).

Under *McDonnell Douglas* the plaintiff first must establish a prima facia case of discrimination, which varies according to the kind of discrimination alleged. Here, the trial court's instruction on plaintiff's prima facie case for race discrimination was as follows:

> The Plaintiff has the burden of proving the following:
> (1) That he belonged to a racial minority;
> (2) That he applied and was qualified for a job for which the employer was seeking applicants;
> (3) That, despite his qualifications, he was rejected.

And, regarding plaintiff's prima facie case for handicap discrimination, the jury was instructed:

> The plaintiff has the burden of proving the following: That he had a handicap as defined by the Michigan Handicappers Civil Rights Act; That he applied and was qualified for a job for which the employer was seeking applicants; That, despite his qualifications, he was rejected.

These instructions resemble the one used in *Clark*

*v Uniroyal Corp,* 119 Mich App 820; 327 NW2d 372 (1982), which is derived from *Texas Dep't of Community Affairs v Burdine,* 450 US 248, 253; 101 S Ct 1089; 67 L Ed 2d 207 (1981).

Once a plaintiff meets his prima facie burden, *McDonnell Douglas* shifts the burden to the defendant to articulate a legitimate, nondiscriminatory reason for not hiring the plaintiff. If this is done, the plaintiff then has the burden of proving that the defendant's reason is a pretext or false. Here, the plaintiff asserts that he improperly was required to prove that he was qualified for the positions for which he applied when there was no dispute as to his qualifications. It is not true that there was no dispute as to his qualifications. As indicated above, even if he had been awarded the additional points, defendant disputed his qualifications. As a result, it is clear that the trial court instructed correctly under the three-prong test of *McDonnell Douglas.*

Plaintiff also claims that the intent requirement implied in prong three of *McDonnell Douglas* need not be proved for his handicap discrimination claim. The Handicappers' Civil Rights Act, MCL 37.1101 *et seq.;* MSA 3.550(101) *et seq.,* states:

> (1) An employer shall not:
> (a) Fail or refuse to hire, recruit, or promote an individual because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position. [MCL 37.1202(1)(a); MSA 3.550(202)(1)(a).]

Here, the trial judge gave the same three-part test for the plaintiff's handicap discrimination claim against the defendant as she gave for his race discrimination claims.

In granting a new trial, the trial judge appar-

ently was persuaded by plaintiff's argument that she should have instructed that intent need not be proven in a handicap discrimination case. That argument relies upon *Wardlow v Great Lakes Express Co,* 128 Mich App 54; 339 NW2d 670 (1983), lv den 419 Mich 871 (1984). In that case this Court said:

> Whether or not the decision was made in good faith is irrelevant. The employee is just as discriminated against if the decision is made in good faith as he is if the decision is made in bad faith. [*Wardlow, supra,* p 70.]

As defendant points out, however, that language has since been clarified by this Court. Now, in order for a failure to hire to fall within the prohibition of MCL 37.1202(1)(a); MSA 3.550(202)(1)(a),

> two requirements must be met: (1) the employer's failure or refusal must have been "because of a handicap" and (2) the handicap in question must be "unrelated to the individual's ability to perform the duties" of the job or position at issue. [*Bogue v Teledyne, supra,* p 377.]

Further in the *Bogue* decision the issue of intent specifically was addressed:

> The employer's intent is irrelevant to determining whether a handicap was unrelated to the plaintiff's ability to perform the job. The employer's intent is not irrelevant to determining whether the employer's failure or refusal to hire, recruit, or promote plaintiff was "because of a handicap". The Legislature's use of the phrase "because of a handicap" demonstrates that the Legislature intended an inquiry into the employer's reasons for failing or refusing to hire, recruit, or promote a handicapped individual. [*Bogue, supra,* p 378.]

In this case, both of the prongs defined above must be proven by the plaintiff. Despite plaintiff's assertion that defendant did not dispute his qualifications, defendant consistently maintained that the plaintiff was rejected, not because of his handicap, but because he was not the most qualified applicant for an apprenticeship and because he was late for his interviews for an hourly position. As a consequence, the trial judge was correct in refusing to instruct the jury that the plaintiff did not need to prove an intent to discriminate, and the granting of a new trial on this basis was error.

The trial court's order for a new trial is reversed and the jury verdict is reinstated.