818 F.2d 31
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles LETO, Plaintiff-Appellant,
v.
The SOUTHLAND CORPORATION; John Walker; and Michael
Laduke, Defendants- Appellees.
 No. 86-1426.
 United States Court of Appeals, Sixth Circuit.
 May 13, 1987.
 
 Before MARTIN and MILBURN, Circuit Judges, and ALDRICH, District Judge*.
 PER CURIAM.
 
 
 1
 Plaintiff Charles Leto appeals from the judgment of the district court granting defendant's motion for judgment notwithstanding the verdict. For the reasons that follow, we affirm.
 
 I.
 
 2
 Plaintiff Charles Leto initiated the present action against his former employer, Southland Corporation, alleging that he was discriminated against on the basis of a handicap in violation of the Michigan Handicappers' Civil Rights Act, MCLA 37.1101 et seq. The case was tried before a jury which returned a verdict in favor of Mr. Leto in the amount of $35,300.00. Southland subsequently filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The district court granted a j.n.o.v. on the ground "that the evidence presented at trial is insufficient to raise a question of material fact for the jury as to any act of discrimination on defendant's part or any failure on defendant's part to accommodate to plaintiff's physical condition." District Court Opinion at 9.
 
 
 3
 Alternatively, the district court concluded that defendant is entitled to a new trial because the verdict was against the great weight of the evidence. Plaintiff perfected this appeal, in which he argues that the jury verdict should be upheld.
 
 
 4
 Plaintiff was hired as a part-time clerk at a Seven-Eleven store owned by defendant in August 1984. On his application, he indicated that he suffers from epilepsy and diabetes. Plaintiff believed that these disorders would not affect his ability to work, and Southland did not require plaintiff to undergo a physical examination before hiring him.
 
 
 5
 On an afternoon during the World Series in October 1984, plaintiff was working alone in the store. Although another employee was scheduled to work for part of the evening, that employee never arrived. Plaintiff had been unable to take a lunch break and began to feel weak from a sugar imbalance. He called his assistant manager, who advised him to clear the store and take a break. Plaintiff did so, ate something, and finished his shift.
 
 
 6
 Linda Mellin, the manager of the store at which plaintiff was employed, feared that plaintiff might be endangered if he continued to work alone. Moreover, she was concerned that his impairment might preclude him from performing his job. Consequently, she brought plaintiff's condition to the attention of Michael LaDuke, Southland's field representative. LaDuke relayed this information to Stephen Champagne, Southland's area personnel manager. Champagne recommended that plaintiff see a doctor, at the company's expense, for the purpose of determining whether plaintiff's epileptic and diabetic conditions would affect his ability to perform the duties of the job, including his ability to work eight hours alone.[1]
 
 
 7
 Plaintiff was not scheduled to work at all during the first two weeks of November 1984. Champagne testified that plaintiff was taken off the schedule because he failed to provide a physician's statement. Although plaintiff initially testified that he took his doctor's note to Southland on October 26, 1984, he also indicated that he did not provide a note until after he was taken off the schedule. The statement, provided by Dr. Eugene Steinberger, read as follows:
 
 
 8
 This patient is under my care for diabetes mellitus and a convulsive disorder. There is no contraindication to his being employed in a productive capacity. It would be best for him never to be alone in the event of a seizure or hypoglycemic reaction.
 
 
 9
 Joint App. at 151 (emphasis supplied).
 
 
 10
 After Leto submitted the note, Southland officials agreed that he would only be allowed to work in the company of another employee. At the time of this initial decision, four hours of double coverage were available each week.[2] Leto indicated that he preferred to work more hours, and Champagne promised that more hours would be provided as they became available. At a subsequent meeting, Walker told plaintiff that if he did not like the scheduling arrangement he could resign.
 
 
 11
 Plaintiff was given additional hours as they became available. There is no evidence that he was ever denied hours of double coverage when they were available. At one point he requested that his workload be reduced. During the month before his resignation, plaintiff worked more hours than at any other time during the course of his employment with Southland.
 
 
 12
 Plaintiff testified that after the incident precipitating the request for the physician's statement, he was the subject of continual harassment. He testified that he was given an inordinately high number of tasks to complete during his shifts, that his coworkers were always assigned easier jobs, and that he was disciplined more harshly than other employees.[3]
 
 
 13
 Plaintiff initiated the present action on January 25, 1985. He continued his employment with the Southland Corporation until May 17, 1985, when he resigned because he believed he had been harassed and abused.
 
 II.
 
 14
 The proper standard for evaluation of a motion for a judgment notwithstanding the verdict is set forth in Toth v. Yoder Co., 749 F.2d 1190 (6th Cir. 1984).[4]
 
 
 15
 The issue raised by a motion for a judgment n.o.v. is whether there is sufficient evidence to raise a question of fact for the jury. This determination is one of law to be made by the trial court in the first instance. In determining whether the evidence is sufficient, the trial court may not weigh the evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury. Rather, the evidence must be viewed in the light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in his favor.
 
 
 16
 Id. at 1194 (quoting Morelock v. NCR Corp., 586 F.2d 1096, 1104 (6th Cir. 1978), cert. denied, 441 U.S. 906 (1979)). If, after thus viewing the evidence, the trial court is of the opinion that it points so strongly in favor of the movant that reasonable minds could not come to a different conclusion, then the motion should be granted. Toth, 749 F.2d at 1194.
 
 
 17
 In the present case, the district court granted the motion on the ground "that the evidence presented at trial is insufficient to raise a question of material fact for the jury as to any act of discrimination on defendant's part" or any failure to accommodate plaintiff's handicap. Because this is a diversity case, the district judge's interpretation of state law is entitled to substantial deference.
 
 
 18
 As we have often stated, "[w]hen this court is reviewing a district judge's interpretation of state law, we give 'considerable weight' to the interpretation of the judge." Bagwell v. Canal Insurance Co., 663 F.2d 710, 712 (6th Cir. 1981). Accordingly, "if a federal district judge has reached a permissible conclusion upon a question of local law, the Court of Appeals should not reverse even though it may think the law should be otherwise." Insurance Co. of North America v. Federated Mutual Insurance Co., 518 F.2d 101, 106 n.3 (6th Cir. 1975) (quoting Rudd-Melikan, Inc. v. Merritt, 282 F.2d 924, 929 (6th Cir. 1960)).
 
 
 19
 Martin v. Joseph Harris Co., 767 F.2d 296, 299 (6th Cir. 1985).
 
 
 20
 In order to establish a prima facie case under the Michigan Handicappers' Civil Rights Act,[5] the plaintiff must establish that he is within the group of individuals protected by the act, that his handicap is unrelated to his ability to perform the job in question, and that the treatment he received from his employer regarding the terms and conditions of employment gives rise to an inference of unlawful discrimination. See Bogue v. Teledyne Continental Motors, 136 Mich. App. 374, 376, 356 N.W.2d 25, 27 (1984).
 
 
 21
 Once plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory basis for its action. If it does so, plaintiff must establish that the proffered reason is a pretext. Carden v. General Motors Corp., 156 Mich. App. 202, ---, 401 N.W.2d 273, 276-77.
 
 
 22
 The ultimate issue is whether the plaintiff has been the victim of intentional discrimination.[6] See Carden, 156 Mich. App. at--, 401 N.W.2d at 277. "The act is not violated by a ... rational business decision not motivated by handicap bias." Bogue, 136 Mich. App. at 376, 356 N.W.2d at 27.
 
 
 23
 In the present case, even assuming without deciding that plaintiff's impairments are unrelated to his "ability to perform the duties" of his job, there is no evidence to support the conclusion that plaintiff was the victim of unlawful discrimination. Defendant requested medical documentation concerning the consequences of plaintiff's handicap only after an incident indicating a possible relationship between plaintiff's handicap and his ability to perform the duties of his employment.
 
 
 24
 After plaintiff's own physician unequivocally stated that "it would be best for him never to be alone," Southland officials restricted plaintiff to hours of double coverage. Although plaintiff indicated that he would have preferred more hours, the record is devoid of any evidence indicating that plaintiff ever challenged the company's interpretation of the letter from his physician.[7] Shortly after the double coverage restriction was instituted, plaintiff began working as many or more hours than before the restriction was imposed.
 
 
 25
 On the facts of the present case, we conclude that Southland's conduct amounted to nothing more than a "rational business decision not motivated by handicap bias." Bogue, 136 Mich. App. at 376, 356 N.W.2d at 27. Moreover, we agree with the district court's conclusion that the evidence presented no question of material fact for the jury on the issue of discrimination, see Toth, 749 F.2d at 1194, and that entry of a j.n.o.v. was appropriate.
 
 III.
 
 26
 Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Ann Aldrich, Judge, United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 One of plaintiff's coworkers testified that Leto told her he was unable to work alone. Plaintiff testified that he felt "queasy" on occasions other than the one precipitating the request for the physician's statement. On such occasions, he was required to take a break
 
 
 [2]
 John Walker, who replaced Linda Mellin as manager of the store where plaintiff was employed, testified that additional hours were available on Friday nights. However, Leto could not accept these hours because Friday was his bowling night
 
 
 [3]
 Although plaintiff claims that he was unfairly disciplined, there is evidence in the record indicating that the number of "write-ups" he received was not particularly unusual. Dawn Adams, one of plaintiff's coworkers, testified that she received "tons" of them. Moreover, because plaintiff worked at Southland for such a short period of time before the World Series incident, no meaningful comparison can be made between the number of write-ups plaintiff received before this incident and those he received afterward
 
 
 [4]
 In Toth, this court recognized that, although we have consistently applied the state law standard for evaluation of a j.n.o.v., "[t]he continued validity of this rule 'is open to question...." 749 F.2d at 1194 n.2. Because the federal and Michigan standards are the same, id., we need not be concerned about a potential conflict
 
 
 [5]
 M.C.L. Sec. 37.1202 provides in relevant part:
 (1) An employer shall not:
 (a) Fail or refuse to hire, recruit, or promote an individual because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position.
 (b) Discharge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position.
 
 
 [6]
 Plaintiff is correct that the employer's intent is irrelevant for purposes of determining whether a handicap is related to the ability to perform the work. See Wardlow v. Great Lakes Express Co., 128 Mich. App. 54, 69 -70, 339 N.W.2d 670 (1983). However, the employer's intent is relevant in the overall determination of whether the plaintiff was a victim of unlawful discrimination. See Carden, 156 M ch. App. at 401 N.W.2d at 277; Bogue, 136 Mich. App. at 378, 356 N.W.2d at 27
 
 
 [7]
 Under circumstances such as these, it is unreasonable to require the employer to make further investigation regarding the consequences of the handicap. See Cook v. United States Department of Labor, 688 F.2d 669 (9th Cir. 1982) (per curiam), cert. denied, 464 U.S. 832 (1983). We note that plaintiff's own complaint indicates that Dr. Steinbrenner could not agree that plaintiff's condition would not prevent him from working alone for up to eight hours. Plaintiff's Complaint paragraphs 12-13