MURPHY v BRADFORD-WHITE CORPORATION

Docket No. 97468. Submitted August 20, 1987, at Grand Rapids. Decided September 15, 1987.

Saundra D. Murphy brought an action in the Barry Circuit Court against Bradford-White Corporation alleging a violation of the Handicappers' Civil Rights Act. The court, Hudson E. Deming, J., granted summary disposition for defendant, holding that plaintiff had no evidence to substantiate that she was discharged from her employment because of a handicap. Plaintiff appealed.

The Court of Appeals *held:*

A plaintiff alleging a cause of action under the Handicappers' Civil Rights Act, to prevail, must establish that the defendant considered the plaintiff to be handicapped. The court correctly concluded that there was no evidence that defendant considered plaintiff to be handicapped.

Affirmed.

CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — BURDEN OF PROOF.

A plaintiff alleging a cause of action under the Handicappers' Civil Rights Act, to prevail, must establish that the defendant considered the plaintiff to be handicapped (MCL 37.1101 *et seq.*; MSA 3.550[101] *et seq.*).

*Carey, Durham & Risdon* (by *Thomas D. Carey* and *Douglas G. Kirk*), for plaintiff.

*Varnum, Riddering, Schmidt & Howlett* (by *William E. Rohn*), for defendant.

REFERENCES

Am Jur 2d, Civil Rights §§ 60.5, 92.5, 98 *et seq.*

Construction and effect of state legislation forbidding job discrimination on account of physical handicap. 90 ALR3d 393.

See also the annotations in the Index to Annotations under Discrimination.

Before: MacKenzie, P.J., and Doctoroff and
J. C. Kingsley,* JJ.

Per Curiam. Plaintiff appeals as of right from
an order granting summary disposition in favor of
defendant pursuant to MCR 2.116(C)(10). We
affirm.

Plaintiff was hired by defendant as an assembly
line worker on March 8, 1985, and, like all new
employees, was placed on probationary status. One
week later, on March 15, 1985, she slipped and fell
at work, injuring her left knee and ankle. Plaintiff
filed a workers' compensation claim, and, under
doctors' orders, she missed three weeks' work.
Plaintiff returned to work on April 8, 1985, with
no restrictions and worked continuously until
April 17, 1985, when she took time off, with a
doctor's note, to recover from medical treatment
received earlier that day. The next day, April 18,
when plaintiff returned to work without restric-
tions, she was discharged by defendant. According
to plaintiff, she was discharged because she was
perceived to be handicapped. According to defen-
dant, plaintiff was discharged due to excessive
absenteeism.

Plaintiff filed a complaint against defendant on
February 21, 1986, alleging that her termination
constituted a violation of the Michigan Handicap-
pers' Civil Rights Act, MCL 37.1101 et seq.; MSA
3.550(101) et seq. Subsection 202(1)(b) of that act
provides:

> (1) An employer shall not:
> (b) Discharge or otherwise discriminate against
> an individual with respect to compensation or the
> terms, conditions, or privileges of employment,
> because of a handicap that is unrelated to the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

individual's ability to perform the duties of a particular job or position.

For purposes of this subsection, the act defines handicap as follows:

> "Handicap" means a determinable physical or mental characteristic of an individual or a history of the characteristic which may result from disease, injury, congenital condition of birth, or functional disorder which characteristic:
>    . . . is unrelated to the individual's ability to perform the duties of a particular job or position, or is unrelated to the individual's qualifications for employment or promotion. [MCL 37.1103(b); MSA 3.550(103)(b).]

In order for an employee's discharge to fall within the ban of subsection 202(1)(b), two requirements must be met: (1) the discharge must have been "because of a handicap"; and (2) the handicap in question must be "unrelated to the individual's ability to perform the duties" of the job or position at issue. Compare *Bogue v Teledyne Continental Motors*, 136 Mich App 374, 377; 356 NW2d 25 (1984), lv den 421 Mich 862 (1985). This case focuses exclusively on the first requirement.

Plaintiff's deposition testimony was that, at the time of her discharge, she was told by Danial Ruffe, defendant's personnel manager, that the reason for her termination was excessive absenteeism. Plaintiff acknowledged that absenteeism was discussed when she was hired and stated that there was "no question" that missed time would be considered at the end of the probationary period. Plaintiff testified that she had no physical hinderance when she was at work and did not consider herself handicapped during her employment. She further testified that no one from management

ever told her or indicated that they believed her to be handicapped. The basis of plaintiff's claim of handicap discrimination was a statement made to her by then union president John Carlson after an April 22 meeting.

*Q.* And tell me what Mr. Carlson said.

*A.* He went to a meeting on a grievance in my behalf, and at the time during the meeting, Mr. Roof [sic] and—was in the meeting and they said the reason they got rid of me was because I was a risk.

\* \* \*

*Q.* Okay. And he didn't tell you what was meant by the risk?

*A.* It was inferred that I wouldn't be able to do my job.

*Q.* How was it inferred that you wouldn't be able to do your job?

\* \* \*

*A.* It just— He told me it was inferred.

Carlson's deposition testimony was that, at the April 22 meeting, nothing about a handicap or the perception of a handicap was brought up by defendant's management or by the union. According to Carlson, at the meeting John Rank, defendant's director of labor relations, "said the reason they let [plaintiff] go is because that Harold Jameson [defendant's shift superintendent] said she was a risk." Carlson testified that there was discussion "about what Mr. Jameson thought was the risk." While he could not recall the substance of that discussion, he was certain that plaintiff's handicapper status was never mentioned. Carlson continued:

*Q.* And you never told her that [defendant said plaintiff was handicapped]?

*A.* No. I never told her that Bradford-White said that she was handicapped because they didn't.

*Q.* And you never told her, "Well, they perceive you to be"?

*A.* No.

*Q.* Did you?

*A.* No. I didn't tell her that.

*Q.* You never told her, "Well, it was inferred by one of them that you were handicapped"?

*A.* No.

*Q.* You never told her, "It was inferred by one of them that they thought you were handicapped"?

*A.* No. I told her—here's what I told her. I told her just what I told her about John Rank said that Harold Jameson said she was a risk.

*Q.* Sure. You didn't say whether it was a risk that she was going to shoot somebody with a gun or a risk that she was too tall to walk around the plant, or a risk for any reason?

*A.* Well, I told her I felt it was a retaliation for filing a workers' comp claim, and I did tell that to John Rank.

Carlson also said that he was unaware, either personally or through the union, of any indications that defendant considered plaintiff to be handicapped.

Both plaintiff and defendant obtained affidavits of Lawrence Tripp, a fellow employee and union representative who was also present at the April 22 meeting. Tripp's first affidavit, presented by defendant, stated that he had never heard Ruffe, Rank, or any other employee of defendant (1) say that plaintiff was terminated because she was handicapped, (2) say that defendant perceived plaintiff to be handicapped, or (3) make an inference that plaintiff was terminated because she was handicapped or perceived to be handicapped. In his second affidavit, obtained by plaintiff, Tripp averred that, while those statements were true,

Rank did tell him that plaintiff was terminated because she was a "risk" and that Tripp understood the remark to refer to plaintiff's knee injury.

Defendant also obtained the affidavits of John Rank and Harold Jameson. Rank stated that he spoke with Tripp, Carlson, and Ruffe concerning plaintiff's termination. Jameson averred that he spoke with Rank and Ruffe concerning the circumstances of plaintiff's termination. Both men stated that they had never heard these persons or any other employee of defendant (1) say that plaintiff was terminated because she was handicapped, (2) say that they perceived plaintiff to be handicapped, or (3) make an inference that plaintiff was terminated due to a handicap or perceived handicap.

On November 14 1986, following the completion of discovery, defendant filed a motion for summary disposition pursuant to MCL 2.116(C)(10). At the conclusion of a hearing, the trial court granted the motion, ruling that, taking the evidence in a light most favorable to plaintiff, there was nothing to substantiate plaintiff's theory that when she was discharged for being "a risk" she was discharged because she was handicapped. The court recognized that plaintiff sustained an injury, but stated that "that doesn't mean that she was discharged because of handicap." In short, the court concluded that plaintiff's claim was too speculative to take to a jury. On appeal, plaintiff contends this was error.

We must agree with the trial court. In determining whether an employee was discharged "because of a handicap", the Legislature intended an inquiry into the employer's reasons for its action. Thus, the employer's good faith or lack of a discriminatory intent is relevant. Compare *Bogue, supra,* pp 377-378. Accord: *Carden v General Mo-*

*tors Corp,* 156 Mich App 202, 211-212; 401 NW2d 273 (1986), lv den 428 Mich 891 (1987). We recognize that summary disposition is rarely appropriate in cases involving questions of intent or state of mind. See, e.g., *Tumbarella v The Kroger Co,* 85 Mich App 482; 271 NW2d 284 (1978). In this case, however, plaintiff has come forward with absolutely nothing which would indicate that defendant perceived her to be handicapped. If plaintiff cannot establish that defendant considered her to be handicapped, it is logically and factually impossible for her to establish that the defendant discharged her because it chose to discriminate on the basis of the handicap. Discharges not based on a handicap do not violate the act. See *Bogue, supra,* p 378.

Plaintiff urges that the testimony indicating that she was discharged because she was "a risk" creates a genuine issue of material fact, because it is unclear what risk defendant considered plaintiff to represent. While we would agree that the meaning of the remark cannot be determined with certainty on this record, we cannot agree that such uncertainty creates a *material* fact question. Again, there is simply nothing on the record suggesting that it ever occurred to defendant or anyone else that plaintiff was handicapped when she was discharged. Because plaintiff was never considered to be handicapped, the risk cited could not have referred to a handicap.

A motion under MCR 2.116(C)(10) tests the factual support for a plaintiff's claim. The court may consider the affidavits, pleadings, depositions, and documentary evidence submitted. If there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, the motion should be granted. *Velmer v Baraga Area Schools,* 157 Mich App 489, 496; 403 NW2d

171 (1987), lv gtd 428 Mich 910 (1987). We agree
with the trial court that, based on the affidavits,
pleadings, depositions, and documentary evidence
presented in this case, defendant was entitled to
summary disposition.

Affirmed.