Roy MINNIS, Plaintiff,

v.

McDONNELL DOUGLAS TECHNICAL SERVICES CO., Defendant,

and

Roy Minnis, Plaintiff,

v.

Caterpillar, Inc., Defendant.

Nos. 99–CV–70252–DT, 00–CV–73336–DT.

United States District Court, E.D. Michigan, Southern Division.

Sept. 27, 2001.

720

Timothy G. Hagan, St. Clair Shores, MI, for plaintiff.

Joi M. Cunningham, Patrick F. Hickey, Detroit, MI, for defendant.

## OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

ROSEN, District Judge.

### I. INTRODUCTION

Plaintiff Roy Minnis, a black male, is a former contract employee of McDonnell Douglas Technical Services Company ("MDTSC"). MDTSC is a company engaged in the business of providing temporary technical services to its clients by providing them on an "as needed basis" with a temporary workforce. One of MDTSC's clients is Caterpillar Corporation. In March 1999, Plaintiff Roy Minnis, as an MDTSC contract employee, was placed at Caterpillar's Mt. Clemens, Michigan facility, to serve as "Site Coordinator." As Site Coordinator, Plaintiff had responsibility for all MDTSC employees assigned to that facility. Plaintiff's employment with MDTSC was terminated in August 1999 after a female employee complained about sexual harassment by Plaintiff.

Plaintiff subsequently filed the above-captioned separate actions against McDonnell Douglas and Caterpillar, respectively, alleging that he was discharged because of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, and in violation of the Michigan Elliott–Larsen Civil Rights Act. He also alleges that MDTSC and Caterpillar retaliated against him in violation of both the federal and state statutes because he opposed certain practices which he believed were discriminatory. He further claims that his MDTSC supervisors and supervisory Caterpillar personnel defamed him by telling MDTSC officials that he was guilty of sexual harassment. Plaintiff's separately filed Complaints were subsequently consolidated for all pre-trial purposes and for trial.

The consolidated cases are now before the Court on MDTSC's and Caterpillar's separately-filed motions for summary judgment. Plaintiff has responded to both motions, to which responses Defendants have replied. The Court heard the oral arguments of counsel on April 26, 2001, and at the conclusion of the hearing, the

Court directed the parties to file supplemental briefs on Plaintiff's defamation claim. The parties have complied with the Court's directive.

Having had the opportunity to review and consider the parties' respective briefs and supporting documents, as well as the oral arguments of counsel, the Court is now prepared to rule on Defendants' motions. This Opinion and Order sets forth the Court's ruling.

## II. *PERTINENT FACTS*

Plaintiff Roy Minnis was first hired by MDTSC as an at-will contract employee in 1995. At that time, Plaintiff entered into the first of a series of Contract Labor Employment Agreements with MDTSC to provide "temporary technical services" to MDTSC's clients. Pursuant to these temporary employment agreements, Plaintiff was first placed at Caterpillar Corporation's Aurora, Illinois facility, and then later, at Caterpillar's Peoria, Illinois facility. Once Caterpillar no longer had a need for a temporary workforce at its Aurora and Peoria facilities, Plaintiff's initial Contract Labor Agreement with MDTSC was terminated. During this initial temporary employment with MDTSC, Plaintiff developed a favorable working relationship with his supervisor, Rick Vogel, and with a Caterpillar manager named Skip Dillin.

Plaintiff thereafter went to work as a truck driver for U.S. Express until he received an offer to return to work for MDTSC again as a temporary contract employee at McDonnell Douglas's facility in St. Louis, Missouri. Following the completion of this temporary assignment, Plaintiff was offered and accepted a position as a recruiter for MDTSC. As a

recruiter, Plaintiff recruited potential temporary employees for placement at various client sites. Plaintiff resigned from the recruiter position in 1997 and went to work for AT & T Wireless and then for Clearwater Transportation.

In March of 1999, however, Plaintiff was again recruited by Rick Vogel of MDTSC to return to work as an MDTSC temporary contract employee to serve as Site Coordinator at Caterpillar's Mt. Clemens, Michigan facility. Vogel recruited Plaintiff for the position based upon their past working relationship, and based upon Plaintiff's past work with Skip Dillin of Caterpillar, who was then the plant manager at the Mt. Clemens facility.[1] Mr. Dillin had had a favorable experience working with Plaintiff in Peoria, Illinois and wanted him to work at the Mt. Clemens facility.

As an MDTSC contract employee, Plaintiff was required to abide by the terms of MDTSC's Policy Against Sexual Harassment, which prohibits any type of sexual harassment, including,

> verbal conduct such as making derogatory comments, slurs, jokes, unwanted sexual advances or propositions; visual conduct such as leering, making sexual gestures, displaying sexually suggestive objects, pictures, cartoons, or posters; or physical conduct such as touching, assaulting, impeding, or blocking movements.

[Defendant MDTSC's Ex. D.]

In addition, Plaintiff's Contract Labor Employment Agreement provided that Plaintiff would comply with all rules, policies and procedures of Caterpillar. [*See* Contract Labor Employment Agreement, Defendant MDTSC's Ex. C.][2] Caterpillar

---

1. Vogel was the branch manager of MDTSC's office in St. Louis, Missouri. He worked out

of that office at all times relevant to this action. [Vogel Dep. pp. 5–6.]

2. The Agreement provided as follows:

also had a Sexual Harassment Policy prohibiting sexual harassment in the workplace. [*See* Defendant Caterpillar's Ex. D.][3]

As indicated, Plaintiff's position at the Caterpillar Mt. Clemens facility was that of Site Coordinator. He was the highest ranking MDTSC representative on the job site and, as the Site Coordinator, Plaintiff had on site responsibility for all MDTSC employees. Plaintiff admitted in his deposition that that responsibility included the administration and enforcement of all MDTSC policies, including the company's policy against sexual harassment. He further admitted that he also had to abide by those policies, and as Site Coordinator, had to avoid even the appearance of inappropriate conduct. [Plaintiff's Dep., Defendant's Ex. A, pp. 36–38.] Plaintiff admitted that the MDTSC anti-sexual harassment policy precluded sexual banter, making sexual advances towards employees, sexual solicitation of employees and engaging in sexual relations with subordinate employees. *Id.*

Plaintiff testified that he supervised approximately 100 to 125 employees at the Mt. Clemens facility. Of these, approximately 80–90 percent were minorities and included African–Americans, Hispanics, Asians and Middle Easterns. The vast majority, however, were African–Americans.

In June 1999, Tracy Quinn, the MDTSC Account Manager assigned to the Caterpillar account, began receiving reports from MDTSC recruiters that employees they had recruited and placed at Caterpillar's Mt. Clemens facility were complaining that the MDTSC management team at the Mt. Clemens site were intimidating employees and that sexual favors were being requested for work and promotion. Ms. Quinn reported this to Rick Vogel, and at his request, she tried to find out more from people on site. Quinn testified however that her investigation was unable to confirm any specific instances of misconduct; rather, all that the employees told her was of having heard rumors that supervisors were having sexual relations with subordinates. Mr. Vogel then met with Skip Dillin of Caterpillar who similarly indicated that he had heard rumors, but had no confirmed report of misconduct. Even though he had nothing to act upon but rumors, Vogel spoke with Plaintiff Minnis and told him to "clean this up."

Approximately a month later, Vogel again began receiving complaints from recruiters that employees were again complaining about inappropriate conduct at the Mt. Clemens facility. Vogel then met with Plaintiff and Plaintiff's first level supervisor, Raleigh Hokes, in St. Louis and advised them of complaints of sexual

---

**Rules, Supervision and Employment Status.** YOU agree to comply with applicable CLIENT rules, policies and procedures, and to look to CLIENT for supervision and direction in performing your job assignment. However, YOU acknowledge and agree that YOU are an employee of MDTSC (not an employee of CLIENT), and only MDTSC will provide you with compensation and benefits pursuant to this Agreement.
Ex. C, ¶ 5.

**3.** Caterpillar's policy defines "sexual harassment" as

any unwelcome sexual advances, requests for sexual favors or any conduct of a sexual nature [that] ... substantially interferes with an individual's work performance or creates an intimidating, hostile or offensive work environment [and] ... include[s]
● any unwelcome action that creates an abrasive or hostile environment. For example, sexual suggestive graffiti, posters, calendars, wolf whistles, jokes
● offers of sexual favors or advances to secure favorable employment conditions or to avoid unfavorable ones
● subtle pressure for sexual activity.

harassment that had been received and that, if they were true, would be grounds for termination.[4] Upon his return to Mt. Clemens, Plaintiff gathered all of the employees for a meeting and told them he did not want to hear anything more about sexual relations between employees.

On August 10, 1999, Skip Dillin of Caterpillar was approached by Darrin Gides, the fiancé of an MDTSC employee, Michelle Savage who informed Mr. Dillin that Ms. Savage refused to return to work because of sexual harassment by Plaintiff Minnis and George Skerbich, a Caterpillar employee. Gides said that Ms. Savage was told by Mr. Minnis that she should go to bed with him and if she did not, that he would fire her from the custodian position she held at the facility. Gides also said that George Skerbich had made sexual remarks to Ms. Savage and pulled her hair. Dillin subsequently contacted Georgeann Fischer, Caterpillar's Human Resources representative, and Bob Williams, his supervisor, in order to determine how to proceed. Upon their instructions, Dillin confronted George Skerbich, who was a white male employed by Caterpillar, and Skerbich admitted having made the comments complained of by Michelle Savage (i.e., "together we're horny because you're a honey and I'm ornery") and having touched her without her consent (i.e., pulled her pig tails). Dillin immediately fired Skerbich for violating Caterpillar's sexual harassment policy.

With respect to Plaintiff, Dillin and his supervisor, Bob Williams, called Rick Vogel and advised him of the allegations made by Ms. Savage and her boyfriend. According to Vogel, Dillin and/or Williams wanted Plaintiff immediately removed from the Mt. Clemens facility.[5]

After receiving the phone call from Dillin and Williams, Vogel contacted Joe Baffa, MDTSC's Human Resources Manager in Long Beach, California and told him Ms. Savage's complaint. Mr. Baffa then called Ms. Savage and Ruth Estel, another MDTSC employee who was allegedly harassed by Plaintiff. Through those telephone conversations, Baffa learned that Plaintiff had, on a number of occasions, asked Ms. Savage to go out with him even though she repeatedly told him she was not interested because she had a boyfriend. He also learned that when Ms. Estel gave Plaintiff a resume of her cousin and asked him to consider her for a job at the Mt. Clemens facility, Plaintiff responded by asking Ms. Estel, "Is she fucking?" [Estel Dep. p. 10–11, Defendant's Ex. L.] When Ms. Estel said "no," Plaintiff refused to consider her cousin for employment. *Id.*

Following these two telephone interviews and after being unsuccessful in his attempts to contact other female employees who had allegedly been sexually harassed, Mr. Baffa called Rick Vogel and told him that Plaintiff's services at the Caterpillar Mt. Clemens facility should be terminated. Vogel flew to Michigan the next day, and with Baffa participating by telephone conference, Plaintiff's employment with MDTSC was terminated.

After Plaintiff was discharged, the position of MDTSC Site Coordinator at Caterpillar was temporarily taken over by Ronnie Allen. Shortly thereafter, Allen was replaced by Tom Ashburn. Both Allen and Ashburn are white males. Ashburn

---

**4.** According to Plaintiff, Vogel never said anything about complaints of sexual harassment at this meeting; rather, what it was complaints of reverse race discrimination that Vo- gel discussed with them. [Plaintiff's dep. p. 83.]

**5.** Skip Dillin, however, has no recollection of making that statement.

was subsequently assigned to another MDTSC client and Walter Zamarino, a Hispanic male, assumed the Site Coordinator position at Caterpillar. [Tracy Quinn Dep. pp. 51–54.]

On September 27, 1999, Plaintiff filed race discrimination and retaliation charges with the EEOC against MDTSC and Caterpillar. Plaintiff was issued a Right to Sue notice on November 15, 1999. On January 18, 2000, Plaintiff filed his Complaint against MDTSC. More than six months later, on July 27, 2000, Plaintiff filed a Complaint against Caterpillar. In both actions, Plaintiff alleges Title VII and Elliott–Larsen claims of race discrimination and retaliation, and state law claims of defamation. The cases were consolidated for all pre-trial and trial purposes on November 13, 2000.

Discovery has now closed and Defendants have moved for summary judgment contending that Plaintiff cannot establish a *prima facie* claim of race discrimination and/or cannot establish that Defendants' articulated reason for his discharge was pretextual. Defendants also contend that Plaintiff has not made out a legally cognizable claim of defamation.[6]

## III. *DISCUSSION*

### A. *STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT*

Summary judgment is proper " 'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Fed. R.Civ.P. 56(c).

■ Three 1986 Supreme Court cases— *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)— ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[7] According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

■ After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

> * Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

---

**6.** Defendant Caterpillar has asserted two additional arguments: (1) Because Plaintiff's Complaint against Caterpillar was filed more than 90 days after the EEOC's issuance of its Notice of Right to Sue, Plaintiff's Title VII claim against Caterpillar is time-barred; and (2) Since Caterpillar was not Plaintiff's employer, it cannot be held liable for any adverse employment action taken against him.

**7.** "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A Charles Wright, Arthur Miller, Mary Kay Kane, *Federal Practice & Procedure*, § 2727, at 35 (1996 Supp.).

\* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

\* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

\* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

\* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association,* 78 F.3d 1079, 1087 (6th Cir.1996). *See also, Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989). The Court will apply the foregoing standards in deciding Defendants' Motions for Summary Judgment in this case.

B. *PLAINTIFF'S TITLE VII CLAIM AGAINST CATERPILLAR IS TIME–BARRED.*

 It is well-settled that in order to satisfy the prerequisites of a Title VII employment discrimination action, a claimant must file a timely charge of discrimination with the EEOC and timely act upon an EEOC Right to Sue letter. *See Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1486 (6th Cir.1989). A civil action under Title VII must be filed within ninety days of the date of the Right to Sue letter from the EEOC. *See* 42 U.S.C. § 2000e–5(f)(*l* ); *see also Cleveland Newspaper Guild, Local 1 v. Plain Dealer Publishing Co.,* 839 F.2d 1147, 1150 (6th Cir.1988), *cert. denied,* 488 U.S. 899, 109 S.Ct. 245, 102 L.Ed.2d 234 (1988). The federal courts have strictly enforced Title VII's 90–statutory limit. *See Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). *See also, Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 557 (6th Cir. 2000).

 The 90–day filing mandate, however, is not jurisdictional, and as such, the limitations barrier "is subject to waiver, estoppel, and equitable tolling." *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Banks v. Rockwell Int'l N. Am. Aircraft Operations,* 855 F.2d 324, 326 (6th Cir.1988). The federal courts, however, only sparingly bestow equitable tolling. *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); *Graham–Humphreys, supra,* 209 F.3d at 560. Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control. *See Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984); *Graham–Humphreys, supra. See also, Johnson v. United States Postal Service,* 64 F.3d 233, 238 (6th Cir.1995) (petitioner's failure to satisfy a deadline caused by "garden variety neglect" cannot be excused by equitable tolling). Absent compelling equitable considerations, a court

should not extend limitations by even a single day. *Graham–Humphreys, supra,* 209 F.3d at 561.

■ The Sixth Circuit uses five factors to consider when determining the appropriateness of equitably tolling a statute of limitations: (1) lack of notice of the filing requirement; (2) lack of constructive notice of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement. *Truitt v. County of Wayne,* 148 F.3d 644, 648 (6th Cir.1998); *Graham–Humphreys, supra.* This list, however, is not comprehensive, nor are each of the five considerations necessary in all cases. *Id.* Rather, "the propriety of equitable tolling must be determined on a case-by-case basis." *Id.,* quoting *Truitt,* 148 F.3d at 648.

As indicated above, Plaintiff filed EEOC charges of discrimination against each of the Defendants on September 27, 1999. He was issued a Notice of Right to Sue with respect to his charge against Defendant Caterpillar on November 15, 1999. That Notice specifically provided:

**Title VII, the Americans with Disabilities Act and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed *WITHIN 90***

*DAYS* **from your receipt of this Notice;** otherwise, your right to sue based on this charge will be lost. (The time for filing suit based on a state claim may be different.)

To have been in compliance with the 90-day limitations period, Plaintiff's Complaint had to have been filed by February 18, 2000.[8] Plaintiff did not file his Complaint against Caterpillar until July 27, 2000, well-after the expiration of the 90-day limit.

■ Plaintiff argues, however, that the 90-day limitations period should be equitably tolled in this case. In making his equitable tolling argument, Plaintiff does not argue lack of notice or ignorance of the 90-day requirement. Rather, he attempts to make out a claim of having been misled by Caterpillar's denial of involvement in his firing in the administrative EEOC proceedings. He claims that it was not until Mr. Vogel was deposed in the MDTSC action in June 2000 that Vogel's notes regarding Plaintiff's discharge were produced [Defendant MDTSC Ex. G]. Vogel indicated in those notes that Caterpillar "wanted him removed immediately—Terminate his services." *Id.* Plaintiff contends that until Vogel produced those notes he had no evidence to refute Caterpillar's denial of involvement with his discharge.[9] (The Court has not been provided with any record evidence of what Caterpillar represented in the EEOC proceedings. The only evidence that has

---

8. The Sixth Circuit has determined that "receipt" of a Notice of Right to Sue is presumed on the fifth day following the EEOC's mailing of the Notice to the claimant's record residential address, unless the plaintiff rebuts that presumption with proof that he o she did not *receive* notification within that period. *See Graham–Humphreys, supra,* citing *Banks v. Rockwell Intern. N. Am. Aircraft Operations,* 855 F.2d 324, 325–27 (6th Cir.1988).

9. Mr. Vogel was questioned about his notes at that deposition and he explained that what Caterpillar wanted was that Plaintiff's services *at the Caterpillar facility* be terminated (i.e., that Plaintiff be removed from his position as Site Coordinator at the Mt. Clemens plant). The decision to terminate his employment with MDTSC (i.e., fire him) was made by MDTSC. [*See* Vogel Dep. pp. 81–83.]

been provided is the indication by the EEOC in the Right to Sue letter of its reason for closing its file on the charge against Caterpillar, i.e., "No employer/employee relationship.")

In support of his argument, Plaintiff relies upon *EEOC v. Kentucky State Police Department*, 80 F.3d 1086 (6th Cir.1996), *cert. denied*, 519 U.S. 963, 117 S.Ct. 385, 136 L.Ed.2d 302 (1996), and cited a very brief redacted excerpt from that decision in which the Court of Appeals stated that equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." 80 F.3d at 1094.

The *Kentucky State Police* case involved, not the timeliness of the institution of the federal court action but rather the timeliness of the aggrieved police officers filing of charges with the EEOC. In that case, the Sixth Circuit found equitable tolling proper to toll the period within which to bring a charge of discrimination so as to find timely charges of age discrimination filed in 1983 by police officers who were forced to retire more than two years earlier. The appellate court applied the *Truitt* factors and found tolling proper in that case because: (1) the U.S. Supreme Court had only three weeks prior to the officers' filing of their EEOC charges decided *EEOC v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), which held that Congress could constitutionally extend the protection of the ADEA to state and local government employees; and (2) the Kentucky State Police had failed to post ADEA notices as required under the law. The court found that the officers' delay in bringing their charge was reasonable because it was only after the Supreme Court's decision in *EEOC v. Wyoming* that they believed they could legally challenge Kentucky's mandatory retirement policy

and they diligently thereafter pursued their rights by filing their EEOC charges within three weeks of that decision. 80 F.3d at 1094–95. The court further found that the officers lacked constructive knowledge of their rights because of the KSP's failure to post ADEA notices. *Id.* The court also found KSP could claim no unfair prejudice because it failed to comply with ADEA's posting requirement. *Id.*

This case, however, does not involve the timeliness of filing a charge of discrimination where "knowledge of one's rights" would come into play. There is no Sixth Circuit authority holding that merely denying the substantive allegations of an EEOC charge tolls the limitations period.

In cases involving the 90–day period *after* the EEOC's closing of its file on a charge to file suit, the Sixth Circuit looks to conduct by the employer *within the 90–day period* which reasonably leads the employee to delay in filing suit. *See Cully v. Lutheran Medical Center*, 817 F.2d 756, 1987 WL 35978, *1 (6th Cir.1987), *cert. denied*, 484 U.S. 899, 108 S.Ct. 236, 98 L.Ed.2d 194 (1987) (unpublished decision; text available in WESTLAW), citing *Baldwin County Welcome Center v. Brown, supra*, 466 U.S. at 151, 104 S.Ct. 1723. *See also, Fox v. Eaton Corporation*, 689 F.2d 91, 93 (6th Cir.1982); *Leake v. University of Cincinnati*, 605 F.2d 255, 259 (6th Cir.1979).

For example, in *Cully v. Lutheran Medical Center, supra*, the plaintiff argued that the 90–day filing deadline should be equitably tolled to permit her to proceed with her sex discrimination action claiming that the defendant submitted fraudulent information to the EEOC concerning the amount of money paid to male employees at the Center. The Sixth Circuit rejected her equitable tolling argument explaining, "[T]he alleged fraudulent information provided by the defendant did not concern the

time period for filing a complaint. So the district court was correct to dismiss the sex discrimination charge as time-barred." *Id.*

By way of further example, in *Fox v. Eaton Corp. supra,* the plaintiff had brought suit for breach of contract in an Ohio state court. In 1974, shortly before trial in that case, Fox and Eaton entered into a stipulation allowing the plaintiff to amend her complaint to allege a claim of sex discrimination. (She had shortly beforehand received a right to sue notice from the EEOC.) Following trial, the state court entered a judgment in favor of Eaton. That decision was affirmed by the Ohio court of appeals, but on appeal to the Ohio Supreme Court in 1976, that court sua sponte held that state courts lack jurisdiction over Title VII actions. Accordingly, the Supreme Court of Ohio reversed the trial court and dismissed Fox's action for lack of jurisdiction. 615 F.2d at 717.

In February 1977, Fox then filed a Title VII action in federal district court alleging essentially all of the same facts that had the basis of her state court action. Defendant Eaton filed a motion to dismiss the federal complaint claiming that Fox had not commenced suit within 90 days of her receipt of her right-to-sue letter. The Sixth Circuit held that the 90–day period was equitably tolled finding that Eaton having stipulated to the amendment of the state court complaint within the 90–day limitations period reasonably led the plaintiff to delay in properly filing suit in federal court.[10]

Plaintiff here has not alleged any conduct by Defendant Caterpillar within the 90–day filing period which lead him reasonably led him to delay in filing suit against this defendant. As in *Cully,* all that Plaintiff has alleged is that Caterpillar made misrepresentations to the EEOC going to the substance of his claims. These alleged misrepresentations had nothing to do with the period for filing his Complaint. Indeed, if it were true that a defendant's denial of involvement or liability in the EEOC proceeding were a basis to toll the ninety-day provision, the limitations period would in most cases be tolled endlessly and would be rendered meaningless.

Plaintiff certainly was aware of the 90–day time limit as he filed his Complaint against MDTSC within the limitations period. That he elected to go forward with his action against MDTSC rather than proceeding against Caterpillar does not relieve him of the requirement to comply with the statutory period with respect to this latter Defendant.

For these reasons, the Court finds Plaintiff's Title VII claims against Defendant Caterpillar time-barred. Therefore, the Title VII claims against Caterpillar will be dismissed.

## C. *PLAINTIFF WAS NOT AN EMPLOYEE OF CATERPILLAR*

Even assuming *arguendo* that Plaintiff's filing of his EEOC charge against Caterpillar had been timely, all of his discrimination claims against this Defendant must be dismissed because neither Title VII nor the Elliott–Larsen Civil Rights Act applies to independent contractors. *See Falls v. Sporting News Publishing Co.,* 834 F.2d 611, 614 (6th Cir.1987); *Jackson v. Roadway Package System, Inc.,* 166 F.3d 1214, 1998 WL 739821 (6th Cir.1998) (unpublished decision; text available on WESTLAW). *C.f., Chilingirian v. City of Fraser,* 200 Mich.App. 198, 504

---

**10.** The Court also found that the Plaintiff was diligent in pursuing her action in state court because prior to the Ohio Supreme Court's decision in her case there was no Ohio authority divesting state courts from jurisdiction over Title VII actions.

N.W.2d 1 (1993), *app. denied,* 443 Mich. 853, 505 N.W.2d 579 (1993). It is undisputed that Minnis's employer was McDonnell Douglas Technical Services. McDonnell Douglas contracted with Caterpillar to provide temporary employees to work at its Mt. Clemens facility. There was no "employer-employee" relationship between Plaintiff and Caterpillar. Therefore, both Plaintiff's Title VII and Elliott–Larsen claims against Caterpillar will be dismissed.[11]

### D. *PLAINTIFF HAS MADE OUT A PRIMA FACIE CLAIM OF DISCRIMINATION*

█ It is well-established that the burden is on an employment discrimination plaintiff—under both federal and Michigan law—to establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Carden v. General Motors,* 156 Mich.App. 202, 210, 401 N.W.2d 273 (1986), *lv. den.,* 428 Mich. 891, 403 N.W.2d 811 (1987).

█ A Title VII plaintiff may establish a *prima facie* case of discrimination either by presenting direct evidence of intentional discrimination by the defendant, *Terbovitz v. Fiscal Court,* 825 F.2d 111, 114–15 (6th Cir.1987) (citing *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111,

121, 105 S.Ct. 613, 621–22, 83 L.Ed.2d 523 (1985)), or by showing the existence of circumstantial evidence which creates an inference of discrimination, *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. *See Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1246 (6th Cir.1995). Similarly, under Michigan's Elliott–Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.,* an employment discrimination plaintiff can establish his *prima facie* case by proving either (1) that he was accorded disparate treatment because of his membership in a protected class or (2) that his employer engaged in intentional discrimination. *Wyatt v. Southland Corporation,* 162 Mich.App. 372, 374–375, 412 N.W.2d 293 (1987); *Dixon v. W.W. Grainger, Inc.,* 168 Mich.App. 107, 114, 423 N.W.2d 580 (1987).

Plaintiff here has presented his claims of race discrimination as disparate treatment claims under the *McDonnell Douglas* paradigm.[12]

█ Under the *McDonnell Douglas* approach, an employment discrimination plaintiff establishes a *prima facie* claim by producing evidence (1) that he is a member of a protected class, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) either (a) that he was replaced by a person outside the protected class or (b) that similarly-situated non-protected employees were treated more favorably. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992). *See also, Talley v. Bravo*

---

**11.** Even if Plaintiff were able to maintain a Title VII or Elliott–Larsen action against Defendant Caterpillar, as discussed below, Plaintiff's claims of discrimination have no merit.

**12.** There is no direct evidence of discrimination in this case. Plaintiff testified that throughout his various employment relationships with MDTSC and Caterpillar, Rick Vogel, Joe Baffa, Skip Dillin and Bob Williams never said or did anything that would indicate

a racial bias or animus. [Plaintiff's Dep. pp. 89–91.] The only individuals identified by Plaintiff as having what he believes to be racial prejudice are Ken Little and Jim Small, two foremen employed by Caterpillar, neither of whom stood in a supervisory capacity over Plaintiff. Nor did either of these two employees have anything to do with the receipt, investigation or decision to terminate Plaintiff's employment.

*Pitino Restaurant, Ltd., supra,* 61 F.3d at 1246; *McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1824; *Chappell v. GTE Prods. Corp.,* 803 F.2d 261, 265 (6th Cir. 1986), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987). The elements of *prima facie* case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and § 1981. *Johnson v. University of Cincinnati,* 215 F.3d 561, 573 n. 5 (6th Cir.2000), *cert. denied,* 531 U.S. 1052, 121 S.Ct. 657, 148 L.Ed.2d 560 (2000).[13]

Defendants here do not dispute that Plaintiff Minnis meets the first two elements of the *prima facie* case, they claim that he cannot satisfy the last two elements—i.e., that he was qualified for his position, or "that any non-minority employees were treated more favorably than he was after being reported for sexual harassment in the workplace."[14]

First, with respect to the fourth *McDonnell Douglas* criterion, Defendants obviously misread *Mitchell* and its progeny as they overlook that the "comparable non-protected person was treated differently" element is an *alternative* to showing that the plaintiff was "replaced by a 'non-protected' person." *See, Mitchell,* 964 F.2d at 582–583. In this case, it is undisputed that Plaintiff was replaced as the Mt. Clemens Site Coordinator by white males. This is sufficient to satisfy the fourth *McDonnell Douglas* element.

With respect to the third element—whether Plaintiff was "qualified"—Defendants argues that Plaintiff cannot be considered a qualified employee because by violating the companies' sexual harassment policies, he did not meet the legitimate expectations of his employer.

In *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 660–66 (6th Cir. 2000), the Sixth Circuit cautioned that the courts must not use the "qualified" element of the *prima facie* case to heighten the plaintiff's initial burden. In an effort to ensure that the first two stages of the *McDonnell Douglas* inquiry remain analytically distinct, and that a plaintiff's initial burden not be too onerous, *Cline* requires that the "qualified" prong of the *prima facie* case be evaluated in light of the plaintiff's employment record *"prior to* the onset of the events that the employer cites as its reason" for its decision. 206 F.3d at 662–3.[15] Moreover, the Sixth Circuit instructed that the legitimate non-discriminatory reason offered by the employer at the second stage of the *McDonnell Douglas* inquiry may not be considered in determining whether the employee has produced sufficient evidence to establish a *prima facie* case. *Id.* at 660–1. Thus, assessing the plaintiff's qualifications by comparison to similarly-situated non-protected class employees is a matter reserved to the Defendant's "legitimate non-discriminatory reason" rebuttal. *Id.*[16]

---

**13.** Michigan courts also utilize the *McDonnell Douglas* construct. *See, Dixon v. W.W. Grainger,* 168 Mich.App. 107, 423 N.W.2d 580 (1987); *Carden v. General Motors,* 156 Mich. App. 202, 401 N.W.2d 273 (1986), *lv. denied,* 428 Mich. 891, 403 N.W.2d 811 (1987).

**14.** Defendant Caterpillar also contends that Minnis does not satisfy the second element with respect to the claims of discrimination against Caterpillar, i.e., there is no evidence

that Defendant Caterpillar "caused Plaintiff's termination from MDTSC."

**15.** Michigan courts have held likewise with respect to the Elliott–Larsen Act. *See, Lamoria v. Health Care & Retirement Corp.,* 230 Mich. App. 801, 584 N.W.2d 589 (1998).

**16.** As this Court noted in *Nizami v. Pfizer, Inc.,* 107 F.Supp.2d 791, 801 n. 11 (E.D.Mich. 2000), the Court finds *Cline* to be problematic. The Court is concerned that *Cline* unduly

■ Turning to the instant actions, Plaintiff's supervisor, Rick Vogel testified that there were no problems with Plaintiff's job performance prior to the complaints of sexual harassment which ultimately led to his discharge. It was only after receiving the complaints of sexual harassment that Defendants found Plaintiff unfit to continue as Site Coordinator. Pursuant to *Cline,* these issues will be considered in the rebuttal phase of the *McDonnell Douglas* paradigm.

For all of the foregoing reasons, the Court finds no merit in Defendant's "failure to establish a *prima facie* case" argument.

### E. *DEFENDANTS HAVE ARTICULATED A LEGITIMATE, NON-DISCRIMINATORY REASON FOR PLAINTIFF'S DISCHARGE*

■ Once the plaintiff has established a *prima facie* case, which creates a presumption that the defendant unlawfully discriminated against the plaintiff, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for the plaintiff's rejection. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981); *Chappell,* 803 F.2d at 265. If the defendant offers a legitimate reason, the burden of production shifts back to the plaintiff to demonstrate that the legitimate reason offered by the defendant was not its true reason but were a pretext for discrimination.

*Burdine, supra,* 450 U.S. at 253, 101 S.Ct. 1089; *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–508, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407 (1993); *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000). The plaintiff may establish pretext by showing that the employer's proffered explanation is false or unworthy of credence. *Id.*

■ Defendants have articulated a non-discriminatory reason for Plaintiff's discharge, i.e., he was fired for violating MDTSC policy against sexual harassment. Federal courts, including the Sixth Circuit have held that discharging an employee in response to allegations of sexual harassment is legitimate and non-discriminatory. *See, e.g., Waggoner v. Garland, Texas,* 987 F.2d 1160 (5th Cir.1993) (summary judgment in favor of defendant affirmed where plaintiff was discharged because of allegations of sexual harassment, which on its fact was a legitimate and nondiscriminatory reason); *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466 (11th cir.1991); *Babb v. Orr Safety Equip.,* 989 F.2d 498, 1993 WL 84496 (6th Cir.1993) (unpublished decision; text available in WESTLAW); *Randolph v. Board of Public Utilities of Kansas,* 983 F.Supp. 1008 (D.Kan.1997); *Williams v. C.J. Gayfers & Co.,* 11 F.Supp.2d 854 (S.D.Miss.1998); *Biddle v. Rubin,* 1996 WL 14001 (N.D.Ill.1996).

In *Elrod, supra,* a former employee who was discharged for sexual harassment brought an action for age discrimination.

places the initial burden on the defendant employer, not the plaintiff, in cases where the employer's non-discriminatory reason for acting happens to coincide with the "qualified" element of the *prima facie* case and seemingly precludes the employer in such a case from arguing in a motion for summary judgment that the employee has no evidence to sustain the "qualified" prong. Even where the "qualified" issue is straightforward—for ex-

ample, in a case where an employer fails to promote an employee who lacks a necessary college degree—*Cline* prohibits any consideration of this issue at the *prima facie* stage, and requires that a court ask only whether the employee was qualified for the position he held before seeking the promotion. Nonetheless, the Court recognizes that *Cline* is now the law of the Circuit, and it is bound to follow *Cline's* ruling.

The court found that the plaintiff had established a *prima facie* case of age discrimination but that Sears, the employer, had articulated a legitimate non-discriminatory reason for firing him. Sears terminated the plaintiff's employment because it believed that the plaintiff had sexually harassed female subordinates and engaged in other inappropriate conduct. The Eleventh Circuit reasoned that even if the allegations of sexual harassment were untrue, its inquiry was limited to whether the employer believed that the plaintiff had committed harassment, and if so, whether this belief was the reason behind the discharge, noting that federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions." 939 F.2d at 1470. *See also, Marshall v. Midlantic Bank,* 1997 WL 805160 (E.D.Pa. 1997) (pretext cannot be established if the employer reasonably believed the allegations of sexual harassment and acted on them in good faith).

Turning to the facts of this case, it is undisputed that MDTSC had received complaints that Plaintiff had sexually harassed female employees and engaged in other inappropriate conduct. Tracy Quinn, the MDTSC Account Manager assigned to Caterpillar, received reports from MDTSC recruiters that employees placed at the Mt. Clemens facility were complaining that the MDTSC management team, including Plaintiff, were intimidating employees and that sexual favors were being requested for work and promotion. Thereafter, Rick Vogel spoke with Plaintiff and told him to clean this up. A month later, Vogel again received complaints from recruiters that employees were complaining about sexually harassing behavior by Plaintiff. Vogel met with Plaintiff and his assistant supervisor in St. Louis and advised them that further complaints would be grounds for termination. Then, on August 10, 1999, Skip Dillin of Caterpillar was approached by the fiancé of Michelle Savage, an MDTSC employee, and was told that she refused to return to work because of sexual harassment by Plaintiff and a Caterpillar employee. Ruth Estel, another MDTSC also complained of sexual harassment by Plaintiff. Following MDTSC's first hand confirmation of these complaints, Plaintiff's employment was terminated.

■ Plaintiff contends that the allegations of sexual harassment are not true, and in support, he has offered his own denial and the affidavits of a number of coworkers who state Plaintiff never sexually harassed them. He also argues that racial tension permeated throughout the plant and appears to contend that race discrimination on the part of MDTSC should be presumed.

The evidence presented by Plaintiff does not establish pretext. It does not show that Ms. Savage and Ms. Estel did not complain of sexual harassment by him. In fact, both complainants were deposed in this case and both testified that they were sexually harassed by Plaintiff. Furthermore, Plaintiff testified that neither Rick Vogel nor Joe Baffa who were the decisionmakers involved in his termination ever exhibited any racial bias or animus toward him. Nor did Skip Dillin or Bob Williams, the Caterpillar managers involved exhibit any racial bias. Indeed, Caterpillar terminated George Skirbich, the white employee, who Michelle Savage also charged with sexual harassment at the same time she made the complaint about Plaintiff. Simply stated, Plaintiff has not come forward with record evidence showing that MDTSC stated reason for firing him for sexual harassment in violation of company policy was a pretext for race discrimination.

Indeed, if employers were required to prove affirmatively that there really was sexual harassment in order to support a defense that an employee was fired due to charges of sexual harassment and thereby rebut a charge of pretext, every discrimination case would quickly dissolve into a trial of the underlying sexual harassment claims and efforts by employers to deter sexual harassment would be undermined.

For the foregoing reasons, the Court will grant Defendants Motion for Summary Judgment on Plaintiff's Title VII, § 1981 and Elliott–Larsen race discrimination claims.

### F. *PLAINTIFF'S TITLE VII RETALIATION CLAIM AGAINST DEFENDANT MDTSC ARE BARRED BY HIS FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES*

■ As indicated above, Plaintiff has alleged retaliation claims under both Title VII and the Michigan Elliott–Larsen Civil Rights Act. [*See* MDTSC First Amended Complaint, ¶¶ 5, 9, 26; Caterpillar Complaint ¶¶ 11, 13, 27.] In order for federal courts to have subject matter jurisdiction over Title VII claims, the claimant must first present his or her complaints to the EEOC. *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir.1991). Before initiating the instant action, Plaintiff filed charge of discrimination against each Defendant with the EEOC on September 27, 1999. In his charge against Defendant MDTSC, Plaintiff alleged the following:

I began employment with the above named company in March of 1999. I was placed at another employer's work site to work as a Plant Coordinator.

On August 11, 1999, I was discharged allegedly for reverse discrimination and a violation of company policy. This is not true. I was replaced by a white male.

I believe that I have been subjected to discharge because of my race, black[,] in violation of Title VII of the Civil Rights Act of 1964, as amended.[17]

As is clear from the foregoing, there is no allegation whatsoever in Plaintiff's EEOC charge that he was claiming that he was discharged in retaliation for opposing discriminatory employment practices.

Furthermore, on the EEOC Charge form, where the complainant is asked to check the appropriate boxes which delineate the bases of his charge, Plaintiff in this case checked only the box marked "race." He did **not** check the box marked "retaliation."

Based upon identical facts, the Sixth Circuit determined that the district court properly dismissed the plaintiff's retaliation claim in *Ang v. Procter & Gamble Co.*, *supra.* As in this case, in *Ang*, the plaintiff's EEOC charge did not refer to retaliation in the factual statement, nor did Ang check the box marked "retaliation" where asked to identify the type of discrimination suffered; all that the plaintiff checked was "national origin" discrimination. The district court granted Proctor & Gamble's motion to dismiss Ang's retaliatory dismissal claim because "the allegations of retaliatory discrimination are not within

---

**17.** Plaintiff's charge against Defendant Caterpillar was virtually identical to his charge against MDTSC:

I was placed at the above employer site location in March 1999, by another employer. I was last employed as a Plant Manager.

On August 11, 1999, I was discharged allegedly for reverse discrimination and a violation of company policy. This is not true. I was replaced by a white male.

I believe that I have been subjected to discharge because of my race, black[,] in violation of Title VII of the Civil Rights Act of 1964, as amended.

the scope of an investigation reasonably related to Plaintiff's charge of national origin discrimination." *See, Ang v. Proctor & Gamble Co.,* 715 F.Supp. 851, 852–53 (S.D.Ohio 1989). The Sixth Circuit affirmed, and in so doing explained the difference between retaliation claims that grow out of the filing of an earlier EEOC charge and those claims—like Plaintiff's claim in the instant action—which arise out of conduct occurring prior to the filing of an EEOC charge. The *Ang* court explained:

> Courts have held "that it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." *Gupta v. East Texas State Univ.,* 654 F.2d 411, 414 (5th Cir.1981); *See also, Baker v. Buckeye Cellulose Corp.,* 856 F.2d 167, 168–69 (11th Cir.1988). Because retaliation claims, by definition, arise after the filing of the EEOC charge, this rule promotes efficiency by requiring only one filing. *Id.* Ang's claim, that P & G fired him in retaliation for his demand that they study the differential treatment of minority Ph.Ds at P & G, involves conduct occurring prior to the filing of the EEOC charges and thus could have been alleged in the original charge. Retaliatory conduct occurring prior to the filing of the EEOC complaint is distinguishable from conduct occurring afterwards as no unnecessary double filing is required by demanding that plaintiffs allege retaliation in the original complaint. *Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534, 545 n. 2 (7th Cir.1988), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989)

932 F.2d at 546–47.

Because the conduct which Plaintiff here bases his retaliation claim occurred before he filed his EEOC charge, in order to be entitled to pursue this claim in this action, Plaintiff would have had to have included allegations of retaliation in his charge. Since he did not do so, he is jurisdictionally barred from pursuing this claim. Therefore, Plaintiff's Title VII claims of retaliation will be dismissed.

### G. *PLAINTIFF HAS FAILED TO MAKE OUT A CLAIM OF RETALIATION UNDER THE MICHIGAN ELLIOTT–LARSEN ACT*

 To make out a claim of retaliation under the Michigan civil rights laws requires that the plaintiff establish (1) that he opposed violations of the Elliott–Larsen Act or participated in activities protected by the Act, (2) that the company was aware of his participation, (3) that the company subsequently took action adverse to plaintiff; and (4) that the opposition or participation was *a significant factor* in the adverse employment decision. *Booker v. Brown and Williamson,* 879 F.2d 1304, 1310 (6th Cir.1989) (applying Michigan law). The *significant factor* standard "requires a showing of more than a 'causal link.' A factor can be a 'cause' without being 'significant.' Only the latter is sufficient to show retaliatory discharge." *Id.,* quoting *Polk v. Yellow Freight System, Inc.,* 801 F.2d 190, 199 (6th Cir.1986). Plaintiff has the ultimate burden of proving that the complained of adverse employment action would not have occurred if he had not engaged in the protected activity. *Id.*

 Both Title VII and the Michigan Elliott–Larsen Civil Rights Act prohibit retaliatory conduct by an employer in two situations: (1) when an employee has made a charge of discrimination, filed a complaint of discrimination, or otherwise

participated in enforcement proceedings ("the participation clause"); or (2) when an employee "has opposed a violation [of the Act ]" (the "opposition clause"). *Booker v. Brown & Williamson, supra,* 879 F.2d at 1312. As the Sixth Circuit observed in *Booker,* "The distinction between employee activities protected by the participation clause and those protected by the opposition clause is significant because federal courts have generally granted less protection for opposition than for participation in enforcement proceedings." *Id.* The "exceptionally broad protection" of the participation clause extends to persons who have "participated in any manner" in Title VII proceedings. *Id.* On the other hand, "the opposition clause" does not protect all "opposition" activity. In opposition cases, courts are required "to balance the purpose of the Act to protect persons engaging reasonably in activities opposing discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." *Id.* (citations omitted). Thus, as the *Booker* court noted,

> There may arise instances where the employee's conduct in protest of an unlawful employment practice so interferes with the performance of his job that it renders him ineffective in the position for which he was employed. In such a case, his conduct, or form of opposition, is not covered.... [Thus, a]n employee is not protected when he violates legitimate rules and orders of his employer, disrupts the employment environment, or interferes with the attainment of his employers goals.

879 F.2d at 1312 (citations omitted).

Plaintiff here does not contend that he was engaged in "participation" activities; rather, as indicated, he claims he was retaliated against for engaging in "opposition" activities. Therefore, his claim claims will be evaluated under the above-quoted standards.

 In order to engage in a protected opposition activity under Title VII or Elliott–Larsen, a plaintiff must make an overt stand against suspected illegal discriminatory action. *Booker v. Brown and Williamson, supra.* "[A] vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice. An employee may not invoke the protections of the Act by making a vague charge of discrimination." *Id.,* 879 F.2d at 1313.

The *Booker* court explained:

> An employee may not invoke the protections of the Act by making a vague charge of discrimination. Otherwise, every adverse employment decision by an employer would be subject to challenge under either state or federal civil rights legislation simply by an employee inserting a charge of "discrimination." In our view, such would constitute an intolerable intrusion into the workplace.

*Id.*

 In this case, there is no evidence of any "overt" action taken by Plaintiff in opposition of Caterpillar or MDTSC employment practices. Therefore, Plaintiff cannot make out a *prima facie* claim of retaliation.

However, even assuming *arguendo* that Plaintiff has succeeded in making out a *prima facie* claim of retaliation, as discussed above in this Opinion, Defendants have established a legitimate non-retaliatory reason for discharging Plaintiff. And, as discussed at length, *supra,* Plaintiff cannot establish that his employer's legitimate, non-retaliatory reasons are pretextual.

For these reasons, the Court will grant Defendants' Motions for Summary Judg-

ment on Plaintiff's state law retaliation claim, as well.

## H. *PLAINTIFF HAS FAILED TO ESTABLISH A LEGALLY COGNIZABLE CLAIM OF DEFAMATION*

Plaintiff also claims that Defendants defamed him by telling other employees that he was terminated because of the sexual harassment allegations lodged against him. The elements of a claim of defamation are: (1) a false and defamatory statement concerning Plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm (defamation *per se* ) or the existence of special harm caused by the publication (defamation *per quod* ). *Andrews v. Prudential Securities, Inc.*, 160 F.3d 304 (6th Cir.1998); *New Franklin Enterprises v. Sabo,* 192 Mich.App. 219, 221, 480 N.W.2d 326 (1991), *app. denied,* 439 Mich. 951, 482 N.W.2d 760 (1992); *Ireland v. Edwards,* 230 Mich.App. 607, 614–15, 584 N.W.2d 632 (1998). Defamation *per se* is found "where the words spoken are false and malicious and are injurious to a person in his or her profession or employment." *Shannon v. Taylor/AMC Jeep, Inc.,* 168 Mich.App. 415, 418, 425 N.W.2d 165 (1988). Accusations of sexual harassment "by their nature, tend[ ] to injure [a person's] personal and professional reputation," and as such, have been held to constitute defamation *per se. See e.g., Steed v. St. Paul's United Methodist Church,* 728 So.2d 931, 941 (La.App. 1999), *writ denied,* 740 So.2d 1290 (La. 1999); *Babb v. Minder,* 806 F.2d 749, 754–755 (7th Cir.1986) (applying Illinois law).

Plaintiff's defamation claim in this case fails because he cannot show that there was an *unprivileged* publication.

MDTSC had a qualified privilege to discuss the allegations of sexual harassment with personnel at MDTSC and Caterpillar. A qualified privilege exists for an employer to publish statements to other employees whose duties give them an interest in the subject matter. The elements of a qualified privilege are: (1) good faith; (2) an interest to be upheld; (3) a statement limited in scope to this purpose; (4) a proper occasion; and (5) publication in a proper manner and to proper parties only. *Smith v. Fergan,* 181 Mich.App. 594, 597, 450 N.W.2d 3 (1989). A plaintiff can overcome a qualified privilege only by showing that the statement was uttered with actual malice, i.e., with knowledge of its falsity or reckless disregard for the truth. *Freeman v. Unisys Corp.,* 898 F.Supp. 485, 491 (E.D.Mich. 1995).

Here, statements regarding the complaints of sexual harassment against Plaintiff or his termination were made to those with direct knowledge of the allegations or those whose job duties interested them in the allegations. Those employees were: (1) Tracy Quinn, the MDTSC Account Manager for Caterpillar who personally received complaints about Plaintiff's sexual harassment; (2) Rick Vogel, the MDTSC manager to whom Ms. Quinn and Plaintiff reported; (3) Skip Dillin, the plant manager at the Mt. Clemens facility; (4) Raleigh Hokes, Plaintiff's second-in-command at the Mt. Clemens site; (5) Georgeann Fisher, Caterpillar's Human Resources Representative; (6) Bob Williams, Mr. Dillin's supervisor; (7) Joe Baffa, MDTSC's Human Resources Manager. Statements to these employees were all cloaked with the duty-interest privilege and Plaintiff has not shown actual malice so as to defeat the privilege. Plaintiff, however, also has alleged that not only were supervisors told that he was fired

because of charges of allegations of harassment but also that MDTSC management also told his former co-workers the reasons for his firing.

Although Michigan, like most other jurisdictions, has held that the qualified duty-interest privilege generally does not extend to statements about a plaintiff made to the employee's co-workers,[18] Michigan courts have never been called upon to determine the scope of the privilege where the statements communicated to the plaintiff's co-workers concerned allegations of sexual harassment in the workplace against him. However, a number of other jurisdictions, which, like Michigan, do not generally deem statements to co-workers to be protected by the privilege, have addressed this issue and they all have held that, in the sexual harassment setting, a broader application of the qualified privilege is called for because of the employer's interest in, and statutory duty to promote and provide a workplace free of sexual harassment.

For example, in *Stockley v. AT & T Information Systems, Inc.*, 687 F.Supp. 764 (E.D.N.Y.1988), applying New York law—which in the context of defamation and the qualified duty-interest privilege is identical in all material respects to Michigan law—the court held that an employer's statements to a defamation plaintiff's co-workers that he was transferred because of allegations of sexual harassment were qualifiedly privileged because they were made in good faith and in furtherance of the company's written policy against sexual harassment and its duty as an employer under federal law.

Applying Mississippi law in *Garziano v. E.I. Du Pont*, 818 F.2d 380 (5th Cir.1987),

the Fifth Circuit reached the same conclusion. In that case, to arrest concerns regarding the plaintiff's termination for sexual harassment and to quell rumors, the employer issued a bulletin concerning the sexual harassment incident which led to the plaintiff-employee's discharge. The bulletin was distributed to approximately 140 supervisors who, in turn, discussed with, or read the bulletin to employees. The court held that the bulletin was privileged, in part because federal law imposes upon employers a specific duty to protect the workplace and workers from sexual harassment, including the duty to redress known occurrences of sexual harassment and to eradicate a hostile or offensive work environment. Similarly, in *Nelson v. City of Cranston*, 116 F.Supp.2d 260 (D.R.I. 2000), the court found that the duty-interest privilege protected an employer who told a group of the plaintiff's co-workers that the plaintiff was terminated for sexually harassing co-workers because the court determined that the disclosure served the defendants' interest in discouraging sexual harassment and promoted the understanding that an employee who engaged in sexual harassment would be terminated. *See also, Hanly v. Riverside Methodist Hospitals*, 78 Ohio App.3d 73, 81–82, 603 N.E.2d 1126 (1991). In that case, the employer held several meetings with employees after the plaintiffs were suspended based on allegations of sexual harassment in which the employer noted their suspensions, explained the company's sexual harassment policy, and allowed employees to vent their concerns about the plaintiffs. The court held that the statements at these meetings were privileged in light of defendants' purpose of affirming

---

**18.** *See Sias v. General Motors Corp.*, 372 Mich. 542, 548, 127 N.W.2d 357 (1964) (qualified privilege did not extend to statements to fellow employees when termination was for theft); *Haddad v. Sears*, 526 F.2d 83, 86 (6th Cir.1975) (qualified privilege did not extend to employees when discharge was for gambling).

its sexual harassment policy. *See also, Alade v. Borg–Warner Protective Services Corp.,* 28 F.Supp.2d 655, 656–57 (D.Colo. 1998) (noting that all employees, not just supervisors, were subject to termination under the defendant's sexual harassment policy, court held that communications to plaintiff's co-workers concerning his discharge for violating that policy were privileged); *Malone v. Eaton Corp.,* 187 F.3d 960, 963 (8th Cir.1999) (statements made at a meeting with supervisors and other company employees held to discuss a shift supervisor's discharge for having an affair with a subordinate and lying about the relationship held privileged under Nebraska law); *Manning v. Cigna Corp.,* 807 F.Supp. 889 (D.Conn.1991); *Smith v. Arkansas Louisiana Gas Co.,* 645 So.2d 785 (La.App.1994), *writ denied,* 650 So.2d 1179 (La.1995).

■ Because neither the Michigan Supreme Court nor the Michigan Court of Appeals has ever been called upon to determine whether the qualified privilege applies in this context, the task of this federal court is to ascertain from all available data what the state's highest court would decide if faced with the issue. *Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 517 (6th Cir.2001), (quoting *Bailey v. V.& O Press Co., Inc.,* 770 F.2d 601, 604 (6th Cir.1985)). Given that the United States Supreme Court has emphasized the employer's legal duty to use reasonable care to prevent and promptly correct sexually harassing behavior and to provide a work place free of sexual harassment, *see Burlington Industries v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and given that numerous other states whose defamation laws are virtually identical to Michigan's have found an employer's statements to lower level employ-

ees concerning disciplinary actions taken against a fellow employee for alleged violations of sexual harassment policies to be privileged, this Court believes that if faced with the issue of determining the scope of the qualified duty-interest privilege under Michigan law, the Michigan Supreme Court would hold that, in light of the duties imposed upon employers under federal law, the qualified duty-interest privilege applies to statements by an employer explaining to its employees that one of their co-workers was discharged based on allegations of sexual harassment.

Based upon the foregoing, the Court finds that the qualified duty-interest privilege applies in this case. The MDTSC managers/foremen, thus, had a qualified privilege to communicate to employees the reasons for Plaintiff's termination as a means of enforcing MDTSC's sexual harassment policy as well as reinforcing that sexual harassment is a serious offense that will not be tolerated in the workplace. And, because Plaintiff has no evidence of actual malice to defeat the qualified privilege, Defendants are entitled to summary judgment on Plaintiff's defamation claim.

### CONCLUSION

For all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendants' Motions for Summary Judgment be, and hereby are, GRANTED. Accordingly,

IT IS FURTHER ORDERED that Plaintiff's Complaints be, and hereby are, DISMISSED in their entirety, with prejudice.

### JUDGMENT

The Court having this date entered an Opinion and Order granting Defendants' Motions for Summary Judgment and dis-

missing Plaintiffs' Complaints in their entirety,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that a JUDGMENT OF DISMISSAL WITH PREJUDICE is hereby entered in each of these two consolidated cases.